## INTERNATIONAL COTTON MILLS v. PERNOD.

(Circuit Court of Appeals, First Circuit. September 22, 1916.)

### No. 1182.

1. MASTER AND SERVANT &#9758;204(1)—MASTER'S LIABILITY FOR INJURY TO SERVANT—NEW HAMPSHIRE STATUTE.

Under Employers' Liability Act N. H. (Laws 1911, c. 163) § 2, which makes an employer liable for injury to a workman through his negligence, or that of his agents or servants, or by reason of defects in plant, ways, works, or machinery due to such negligence, and provides that "the workman shall not be held to have assumed the risk of any injury due to any cause specified in this section," the right of recovery is still conditioned on proof of want of reasonable care on the part of the master or his employés, and the assumption of risk clause is applicable only where such negligence is shown.

2. MASTER AND SERVANT &#9758;107(5)—MASTER'S LIABILITY FOR INJURY TO SERVANT.

The duty of a master to exercise care depends upon the reasonable apprehension of danger, and he may rely upon the exercise by his servants

---

&#9758;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of ordinary care to avoid such dangers as are properly incidental to the work. He is not obliged to keep the place safe at every moment, so far as such safety depends on the due performance of the work by the servant himself.

3. MASTER AND SERVANT ⬅107(8)—MASTER'S LIABILITY FOR INJURY TO SERVANT—UNSAFE PLACE TO WORK—"DEFECT IN WAY."

Plaintiff, an employé in defendant's cotton mill, was engaged in moving a large roll of·cloth from a low bench upon a truck. Iron shells or cores three inches in diameter were passed through the center of the rolls in handling. The roll which plaintiff was moving started to roll off the bench, and in moving quickly he stepped upon a core lying in the passageway and was injured. The bench stood beside a passageway 30 inches wide, and it was customary for the workman, after using a core, to leave 'it on the floor, to be convenient when again wanted. Plaintiff saw this core, and had previously moved it with his foot. *Held*, that the presence of the core in the passageway, where it had been temporarily left by a workman, and which was known to plaintiff, did not constitute a "defect in the way," within the meaning of the statute, or charge defendant with negligence which was the cause of plaintiff's injury.

In Error to the District Court of the United States for the District of New Hampshire; Edgar Aldrich, Judge.

Action at law by Emiel Pernod against the International Cotton Mills. Judgment for plaintiff, and defendant brings error. Reversed.

Edward C. Stone, of Boston, Mass. (Sawyer, Hardy, Stone & Morrison, of Boston, Mass., on the brief), for plaintiff in error.

Henry B. Stearns and Hiram A. Stearns, both of Manchester, N. H., for defendant in error.

Before PUTNAM and DODGE, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. This is a writ of error for review of the rulings of the District Court in an action for negligence.

The plaintiff below was moving a large and heavy roll of cloth from a low bench, 14 inches in height, to a truck, 7 feet long, provided at each end with a standard, 23 inches in height, to receive the ends of the core about which the cloth was rolled. The diameter of the roll was about 28 inches; of the core, 3 inches. The top of the standard ·was, therefore, at a lower level than the lower surface of the end of the core which was to rest upon it. The transfer of the roll, therefore, did not involve raising the roll, but only guidance of the core of the roll into a standard at a lower level.

The plaintiff had fixed one end of the core on its standard, while the whole weight of the roll was supported by the bench, and was about to swing the other end of the roll, and to drop and guide it to its standard. Evidence as to the weight of the roll affords slight indication of the amount of exertion required of the workman in making the transfer.

The plaintiff testified that before he was in a position to handle the roll it started of its own accord and rolled off. He was off his balance when it rolled, and started to catch himself by moving his right foot forward, and stepped on a core, which rolled. His injury was a strain.

---
⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It was contended by the plaintiff that the core upon which he stepped was, under his feet through the negligence of the master in permitting a passageway, 30 inches wide, to be obstructed by the presence of cores, and that this was a defect or insufficiency in the ways due to the negligence of the defendant or its employés.

[1] The plaintiff testified that he knew of the presence of some cores in the aisle or passageway, and that he pushed them back with his heel just before the accident. It is contended, however, that the defense of assumption of risk is inapplicable because of the New Hampshire statute (Laws N. H. 1911, c. 163, §§ 1, 2):

"Section 1. This act shall apply only to workmen engaged in manual or mechanical labor in the employments described in this section: * * * (b) Work in any shop, mill, factory or other place, on, in connection with or in proximity to any hoisting apparatus, or any machinery propelled or operated by steam or other mechanical power in which shop, mill, factory, or other place, five or more persons are engaged in manual or mechanical labor. * * *

"Sec. 2. If, in the course of any of the employments above described, personal injury by accident arising out of and in the course of the employment is caused to any workman employed therein, in whole or in part, * * * by the negligence of the employer, or any of his or its officers, agents, or employés, or by reason of any defect or insufficiency due to his, its or their negligence in the condition of his or its plant, ways, works, machinery, * * * equipment, or appliances, then such employer shall be liable to such workman for all damages occasioned to him. * * * The workman shall not be held to have assumed the risk of any injury due to any cause specified in this section; but there shall be no liability under this section for any injury to which it shall be made to appear by a preponderance of evidence that the negligence of the plaintiff contributed."

Under this statute the defense of assumption of risk is abolished only in cases where the injury is attributable to negligence, and the liability of the master is still conditioned upon negligence. Seaboard Air Line Co. v. Horton, 233 U. S. 492, 501, 502, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475. His responsibility is still limited to the exercise of reasonable care by himself and his employés. In Labatt's Master and Servant, vol. 2, § 666, it is said of a similar act:

"So far as regards the character of the actual physical conditions which warrant the inference of culpability on the part of the immediate actor, whether he be the master himself or an employé, the evidential prerequisites to establishing a right to indemnity are essentially the same under the statutes as at common law."

[2] In considering whether there has been a failure to exercise reasonable care, we cannot ignore the fact that the duty to exercise care depends upon the reasonable apprehension of danger, and that the master may rely upon the exercise by his servants of ordinary care to avoid such dangers as are properly incidental to the work. The master is not obliged to keep the place safe at every moment, so far as such safety depends on the due performance of the work by the servant himself. Kreigh v. Westinghouse & Co., 214 U. S. 249, 256, 29 Sup. Ct. 619, 53 L. Ed. 984.

The risk of injury from his own failure to exercise such ordinary care as is necessary to avoid an obvious danger arising in the prog-

ress of the work is a risk still assumed by the employé; for the master cannot be held negligent merely because the work involves danger unless the servant takes precautions which any intelligent man would see to be appropriate under the circumstances.

[3] The evidence failed to show any defect in the permanent fixtures or arrangement of the working place. The passageway, or aisle, was 30 inches in width, and the benches forming the aisle but 14 inches high. The cores, which were iron shells 6½ feet long, 3 inches in diameter, and weighing about 40 pounds, were appliances in use in handling the rolls, and in the course of the work were put into and taken out of the rolls. When taken out, it was usual to put them between the benches in the aisle. As they were heavy, it was convenient to the work to have them near at hand for use.

The temporary disposition of these cores in the aisle was not proved to have been unnecessary or improper, having regard to the work in hand. On the contrary, the only witness, a witness called by the plaintiff, who gave testimony relating to this subject, testified that this was the handiest place for them. Furthermore, they were movable; and in fact just before the accident the plaintiff did move one of them by kicking it. Their presence was known, they could be moved to such extent as was necessary to secure proper standing room, and there was no evidence to show that the plaintiff, by the exercise of ordinary care, could not have given himself ample standing room for his work, or that any urgency of the work prevented him from doing so.

The case, therefore, differs essentially from one in which there is some unreasonable and unnecessary obstruction, having no proper relation to the work, and falls within that class of cases which hold that those conditions which, in all kinds of industrial work are temporarily created by the user of the appliances furnished by the master, are not considered to be caused by "defects," within the meaning of the statute. Labatt's Master and Servant, vol. 2, § 675.

Assuming that the plaintiff was properly found by the jury not to be guilty of contributory negligence, the injury must then be regarded as due to accident rather than to the master's negligence.

The plaintiff also claimed negligence in respect to the condition of the movable standard of the truck, and of an iron pipe handle, so called; but there is an entire failure of evidence to show that the roll fell on account of either of these alleged defects.

There was nothing to justify a finding that the fall of the roll was due to the defendant's negligence, nor, so far as appears from the charge, was the case submitted to the jury on that issue.

We are of the opinion that upon all the evidence the plaintiff was not entitled to recover, and that the refusal of the defendant's request to so charge was error.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers costs in this court.

PUTNAM, Circuit Judge. I concur in the result. Two requests were made by the defendant in the court below that a verdict be di-

rected for the defendant on the entire record. The first request was waived by subsequent proceedings; but the second request should have been granted. A careful reading of the record shows that the case was tried on an allegation of negligence on the part of the defendant below; but while, under the New Hampshire statute, the assumption of risk on the part of the plaintiff might have been in issue, it was not. It is true that the dangerous element at the outset was the cores lying on the floor; but the plaintiff did not permit them to remain as the defendant left them, but, as the record says, "brushed them aside with his foot, and then went along with his work." The causa causans was the rolls in the positions to which the plaintiff below had removed them. There was no evidence that the accident occurred by reason of the rolls being in the location where the defendant below had left them, while the removal of the rolls from the position in which the defendant left them was in no way in the eyes of the law connected with what the defendant below did or omitted to do, but was separated from what the defendant did or omitted to do by intelligent action on the part of the plaintiff below, which in no way arose out of or was connected with what the defendant below has done, and was wholly independent thereof in the eyes of the law. Consequently, the record contained no evidence showing that what the defendant below did was the causa causans, but, on the other hand, showed the reverse.

The verdict should therefore, as matter of law, have been directed for the defendant below under its second motion.