### THE FRANK D. STOUT.

### JOHANSON v. BROOKINGS COMMERCIAL CO.

(Circuit Court of Appeals, Ninth Circuit. October 10, 1921.)

No. 3638.

1. **Seamen ⌖29(5)—No recovery on ground of negligence not pleaded.**
   In an action by a seaman against the owner of a schooner to recover for injuries suffered, no recovery could be had on account of defect in hook used, where such defect was not pleaded.

2. **Seamen ⌖29(5)—Finding that owners were not negligent in using wire sling sustained.**
   In an action by a seaman against the owner of a schooner to recover for personal injuries suffered while unloading lumber, evidence *held* to sus-

tain finding that it was not the duty of the ship to furnish a chain sling with a trip line, rather than wire.

**3. Seamen ⬅⇒29 (3).—Failure to use trip line not attributable to ship.**

If it was negligence not to use a trip line on a sling while unloading lumber from a schooner, such carelessness was attributable to the officers of the schooner, and not to the owners, who had supplied sufficient ropes that could be used for such purpose.

**4. Seamen ⬅⇒29 (3) —Ship not liable for negligence of mate or winchman.**

Neither a vessel nor her owner is liable for injuries received by a seaman, unless they are caused by the unseaworthiness of the vessel, or a failure to supply and keep in order the proper appliances appurtenant, and they are not liable for injury to a seaman whose place of work was dangerous only by reason of negligence of a mate or winchman.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Libel in admiralty by Adolph Johanson against the Brookings Commercial Company, claimant of the American steam schooner, Frank D. Stout. Decree for claimant, and libelant appeals. Affirmed.

S. T. Hogevoll, of San Francisco, Cal., for appellant.

Farnham P. Griffiths and McCutchen, Willard, Mannon & Greene, all of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from a judgment dismissing a libel for injuries received while unloading lumber from the steamer Frank D. Stout, at San Pedro, Cal. Libelant sets forth that while the ship was in the act of unloading, and while it was the duty of the owners to furnish the ship with proper appliances and to keep them in repair, the owners neglected their duty, in that they used an unsafe sling, made of wire, instead of a chain; that libelant was 14 feet below the deck, unfastening the wire sling; that the ship was lowering a heavy piece of lumber, held by the wire sling; that the lumber had been placed on the water, and before libelant had time to unfasten the sling holding the load the winch driver, who did not know that the sling had not been unfastened, started to raise the winch, but a signal was not obeyed, and a heavy piece of lumber was lifted from the water against the side of the ship, and libelant's foot was crushed between the lumber and the side of the ship; that there should have been a tripping or releasing line.

Respondent denied negligence, and admitted the use of a wire sling as the only proper appliance for work such as was being done, and pleaded that libelant, together with other seamen, was engaged in discharging timber, and that in the performance of his work, and while standing on timbers alongside of the ship, engaged in the work of unfastening the hook attached to the sling, libelant's foot was crushed, and that his injury was one of the risks and dangers incident to his employment. Further defense is that, while the ship was unloading, the mate, who was standing on top of the deck load of the ship, gave

⬅⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an improvident order to the winch driver to draw a timber in a sling closer to the vessel, and in obedience to such order the winch driver improvidently swung a timber toward the ship, and in that manner libelant was hurt; that all of the officers and members of the crew were at the time fellow servants of libelant, for whose negligence, if any, claimant is not responsible.

After hearing evidence, the District Court held that the injuries were not caused by the use of improper or unsafe appliances, but by the negligence of a member of the crew; that the slings complained of were perfectly safe, if the signalman and winch driver had been careful; and that there was no evidence that the winch itself was not in good condition.

The libelant's testimony was that he was standing on the deck load while they were swinging lumber; that in discharging it over the side, by direction of the mate in charge, one man had to go down to unhook the lumber, because there was no chain sling or tripping line, and it could not be unhooked from the deck; that he went down and was on the lumber for a time, when a timber came over the side into the water; that by order of the mate he went to unhook it with his hand, and was about 6 feet away from the sling, but that before he could catch hold of it the winchman started the winch, and libelant was caught between the ship and the timber; that he hollowed, but the winchman did not stop; that the pole used by the man on deck to unhook was about 18 feet long, but it was not long enough to reach the lumber; that in discharging lumber over the side of the ship it is usual to have a chain sling with a tripping line, so that one can stand on the deck and pull the tripping line, and the chain will unhook, so that it is unnecessary to go down to the lumber; that the winchman could not see him at the place where he was hurt; that when wire slings are used, and "you let go the falls, the wire sling coils up and jumps up toward the hook, and you cannot unhook it without using your hand"; that while he was reaching out to unhook the load the second mate must have given the signal to the operator of the winch to "come in"; that if the log had been left resting where it was, it could have been unhooked, and the accident would not have happened.

Libelant explained that "at the point of the hook is where you make the slipping line fast; when you pull that, it takes the hook over, and the chain slips out of the hook"; that he saw ropes on the ship which could have been used for tripping lines. There was some evidence tending to show that the customary way of unloading lumber from a schooner is by a chain sling; that a chain sling unhooks readily, when you have a tripping line on it; that a tripping line is fastened to the hook part on the chain sling; and that it can be reached from the rail of the ship.

To counteract this evidence respondent introduced witnesses of long experience, who testified that they preferred to use wire slings, because they thought it was safer, and that they did not use tripping lines, but would let a man go down and stand to one side. Several marine engineers also testified that there was greater safety in the use of the

wire sling, because it was easier to notice a defect in the wire than to discover a crack or defect in the link of a chain.

[1, 2] No basis for recovery can be made on account of the length of the hook, because there was no claim of that kind pleaded; moreover, the handle of the hook furnished was 18 feet long, and was used for several timbers before the accident. That evidence is not contradicted. Nor can we hold that the District Court erred in concluding that it was not the duty of the ship to furnish a chain sling with a trip line, rather than wire. The weight of the evidence of men of long experience in unloading ships is that a wire is safer than a chain sling, and witnesses explained that a rope or trip line could be tied to the hook of the sling of wire as well as to a chain.

[3] If it was careless not to use a trip line, such carelessness is attributable to the officers of the ship, but not to the owners, who supplied ropes.

[4] The place where libelant was injured became dangerous only by reason of the negligence of the mate or winchman, for which the shipowner is not liable. From the entire record it seems quite clear that the cause of the accident was the manner in which the work of unloading was prosecuted, and that, had it not been for the carelessness of the mate or the winchman, the accident would not have happened. Some of the witnesses for libelant said that the signalman must have been careless in not giving the signal to the winchman, as it was the duty of the signalman to watch and see that the load is not drawn in so as to hurt the man below. But under the doctrine of Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171, except for failure to render proper medical treatment, neither a vessel nor her owner is liable to an indemnity for injuries received by a seaman, unless they were caused by the unseaworthiness of a ship or a failure to supply and keep in order the proper appliances appurtenant.

The case of The Hoquiam, 253 Fed. 627, 165 C. C. A. 253, is not pertinent, for the decision there was that section 20 of the Seamen's Act (Comp. St. § 8337a) does not apply as between a seaman in command and a stevedore who was not a seaman, under his command.

The decree must be affirmed. Appellee asks no costs, and none will be allowed in its favor.

Affirmed.